SMITH *v.* THE STATE.

No. 6653.  DECEMBER 15, 1928.

*Fermor Barrett* and *E. C. Stark,* for plaintiff in error.

*George M. Napier, attorney-general, Pemberton Cooley, solicitor-general, T. R. Gress, assistant attorney-general, J. B. G. Logan,* and *Sam Kimzey,* contra.

BECK, P. J.  Wash Smith was tried under an indictment charging him with the murder of one Jud Wells.  The jury returned a verdict of guilty.  The accused filed a motion for a new trial containing the usual general grounds, and subsequently filed an amendment to the motion.  His motion was overruled, and he excepted.

■  In the first special ground of the motion error is assigned upon the failure of the court to charge the law of voluntary manslaughter.  The evidence relating to the fact of the homicide, which was given by eye-witnesses to the occurrence, shows the killing to have been murder, and there was no evidence to reduce the homicide from the grade of murder to voluntary manslaughter.  Consequently, even if the defendant's statement did make a case

of voluntary manslaughter, the failure of the court to charge upon that subject was not error in the absence of an appropriate written request duly offered by counsel for the defendant.

■ Over the objection of counsel for the accused, a witness for the State was permitted to testify as follows: "There was about two in front of me, and I was back about two steps; well, those in front heard something, some one, coming up the road, and they kind of stopped and come running back. I just dropped on the side of the bank, and just set right down against the side of the bank and had my gun leaning over on this arm, when he come up about even with us. I didn't know who the party was; he was something like the distance from here to that stove, say, from us, and all at once he throwed his gun right that way, and as he throwed it up he cocked both barrels, and he said, 'Boys, I ain't got a damn word to say; if you got anything to say, say it now.' Well, I knew I was setting right there and I couldn't do nothing, and he kept his eyes right on me, and of course I was watching to get my chance at him. I thought, if I could get his attention off of me, I could make two leaps and grab him without shooting him; and so about that time Mr. Hill said, 'Drop that gun,' and when he said, 'Drop that gun,' he just wheeled and throwed it on him just that way, and two shots fired, and I throwed my gun on him and shot as quick as I could, and after I shot jumped up and started towards him and pulled my trigger again, and my gun wouldn't revolve, and he kind of turned around and started to run, and I went after him, and he throwed his gun down on the ground, and so I taken down the road after him and would hit him in the back of the head and knock him down, and I pulled back and throwed the gun at him, and I•didn't hit him, and he run down the road and taken out a ridge road and got away from us. We caught him about, something like, I guess, between two and two and half hours after that." The objection to this evidence was that it was irrelevant and immaterial. This evidence, it is stated, refers to the meeting of the defendant with the sheriff and other officers. This meeting took place between ten and fifteen hours after the killing, and apparently some distance from the scene of the homicide. The defendant had left the actual scene of the homicide immediately after the shooting took place, and had gone away to the house of an acquaint-

ance. There was also testimony to show that the defendant knew that the sheriff was seeking to arrest him. This evidence, then, was material upon the question of flight—whether the defendant was attempting to escape. There was no question that he had killed the decedent. He knew it, and yet he left the place at which he had committed the crime and went away. The jury could infer from this evidence that he was attempting to escape and was unwilling to be arrested, and that he was conscious of guilt. The court did not err in overruling the objection to this testimony.

■ The court charged the jury as follows: "Now, gentlemen, in this case the court will give you in charge the law applicable to flight, if flight has been proven in this case. You may consider flight, if any, and similar acts, if proven, from which an inference of guilt may be considered by the jury, but flight, if any, is subject to explanation; the weight to be given to it, or whether the jury will draw a consciousness of guilt or not, is for the jury. It is for the jury to determine whether the flight of the defendant, if any such has been proven, was due to the sense of guilt or for other reasons; and if for other reasons, no inference hurtful to the defendant should be drawn. And that is a question for the jury, it is one that you must determine from all the facts and circumstances in the case. It is for the jury to determine whether or not the flight of the defendant, if there was such flight proven, was due to a sense of guilt or for any other reason; and if for any other reason and not from a sense of guilt, it should not be considered by the jury." This charge is excepted to, first, on the grounds that there was no evidence to authorize the charge on the subject of flight; that the charge was in effect an intimation by the court that there was evidence of flight; and that the charge tended to lead the jury "to believe that the circumstances would infer guilt." None of these objections to the charge is meritorious. There is no intimation of opinion by the court. There was sufficient evidence to authorize a charge upon the subject of flight; and the charge left it to the jury to say what deductions they would draw from the evidence of flight, if such flight was proved.

■ The court also charged the jury: "If you find there were previous threats of the deceased, they are not to be considered unless you find there is some proof of attack or overt hostile act, showing an intention on the part of the person making the threats

to carry those threats into execution, and you are to consider them only if you find there was some overt act on the part of the deceased, if you should find any threats were made in the case." This charge is excepted to on the ground that the court, in using the words, "some proof of attack or overt hostile act," failed at the same time and in the same connection to include reference to the statement of the defendant "along with the use of the word 'proof,' for the reason that the charge as made excluded from the consideration of the jury, in connection with the charge of threats, a consideration of the statement of the defendant, and especially so since the threats were shown only in the statement of the defendant." This charge was error, as it tended to exclude from the consideration of the jury the statement of the accused in reference to the threats and overt act on the part of the deceased, which the accused recited as a part of his statement. It is true that the general charge of the trial court, as has been more than once ruled by this court, is to be framed upon the evidence alone, though the court is required at some stage of its charge to appropriately instruct the jury with respect to the prisoner's statement. *Tucker* v. *State,* 133 *Ga.* 470 (66 S. E. 250) ; *Brantley* v. *State,* 133 *Ga.* 264 (65 S. E. 426). And other cases might be cited stating the same doctrine. But it is a general rule that where the court in his charge deals with a theory of the case that is presented only in the statement of the accused, and thus in effect deals with the statement, his charge upon the subject must correctly state the law applicable thereto. A part of the charge quoted above was erroneous for the reasons stated, and it can not be held that the error in the charge was not hurtful to the accused; for he relied upon his statement to show the threats and the overt act. This was the foundation of his defense, and it should not have been excluded from the consideration of the jury or in any way weakened by a charge from the court.

The opinion of the majority of the court is that this charge was such an error as to require the grant of a new trial. But the writer, speaking for himself, must dissent from the ruling of the majority upon this point. It is true that if the court charges at all upon a theory of the case presented by the defendant's statement, he must charge correctly upon that subject; and the portion of the charge now under consideration contains the error pointed

out above. But I do not think that it requires the grant of a new trial; because in another portion of his charge the court instructed the jury that the prisoner had the right to make a statement; that the jury could believe a part or all of that statement, and might believe it in preference to the sworn testimony. The jury are men of intelligence, and they must have known, if they believed the statement of the prisoner—and they could believe it in preference to the sworn testimony, if they saw fit,—that the deceased had made threats, and that there was an overt act on his part at the time of the homicide, indicating an intention to carry out the threats. The charge quoted left them free to accept the prisoner's version; and the fact that they found him guilty shows that they did not give credence to the statement, that they rejected it as untrue. They believed the evidence of the two eye-witnesses to the homicide, whose evidence showed an unprovoked murder; and I am of the opinion that the verdict should not be set aside because of the inaccuracy in the charge pointed out. For these reasons I respectfully dissent from the ruling of the majority. Mr. Justice Hill concurs with me in this dissent.

The ground of the motion for a new trial based upon alleged newly discovered evidence as to the unauthorized separation of the jury pending the trial, etc., need not be considered, as a new trial is granted upon another ground.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Hill, J., dissenting.*